35 So.3d 373 (2010)
STATE of Louisiana in the Interest of B.E.T.
No. 2009 CJ 1782.
Court of Appeal of Louisiana, First Circuit.
February 12, 2010.
Theresa Beckler, Sherry Watters, Harahan, Louisiana, for Plaintiff/Appellant State of Louisiana Department of Social Services, Office of Community Services.
Before DOWNING, GAIDRY and McCLENDON, JJ.
McCLENDON, J.
This is an appeal of a judgment dismissing the father listed on a birth certificate *374 from adoption proceedings after it was determined that he was not the biological father. For the reasons that follow, we reverse the judgment and remand to the district court for further proceedings.

FACTUAL AND PROCEDURAL HISTORY
On July 4, 2008, B.M. gave birth to her son, B.E.T. in Hammond, Louisiana. At the time of B.E.T.'s birth, E.T. believed that he was the biological father, and his name was listed on the birth certificate as the father.
On July 7, 2008, the district court signed an instanter order placing B.E.T. in the custody of the State of Louisiana, Department of Social Services, Office of Community Services (OCS) for placement. The affidavit by OCS in support of the order stated that at the delivery of B.E.T., B.M. tested positive for cocaine. B.E.T. was also tested and was positive for cocaine. B.M. reported that she had abused cocaine for the previous two years. She also stated that she had lived in numerous places during her pregnancy and recently began staying with her father. B.M. also stated that she lost custody of her three-year-old daughter, who now resides in South Carolina with her adoptive family. E.T. stated that he had an on-and-off relationship with B.M. for a year and that he was the biological father of B.E.T. He stated that he was currently applying for disability and had been residing with a family friend for many years. E.T. also reported that he abused cocaine and was an alcoholic. Collaterals further reported that B.M. had a long-standing history of substance abuse, was a prostitute, and had no stability to offer her minor child.
On August 7, 2008, the district attorney for the 21st Judicial District Court filed a petition seeking to adjudicate B.E.T. a child in need of care (CINC) pursuant to the Louisiana Children's Code. At an answer hearing held on September 11, 2008, the district court found that E.T. had been ruled out as the father of B.E.T., based on DNA testing, and was dismissed from the case.[1] Judgment was signed on September 18, 2008.
On March 5, 2009, the court adjudicated B.E.T. a child in need of care and further ordered that adoption was the permanent placement plan for B.E.T. Judgment was signed on March 31, 2009. On June 15, 2009, OCS filed a "Certification for Adoption and Petition for Termination of Parental Rights," which included E.T. as a parent.[2] Following a hearing on July 9, 2009, the juvenile court concluded that there were no grounds to proceed against E.T., and judgment was signed on August 13, 2009, dismissing E.T. from the petition "as DNA test proved he was not the father, he was not married to the mother and there had been no acknowledgement of paternity."[3] The court concluded that considering *375 its findings, there was no right of action against E.T. OCS appealed.

DISCUSSION
In its appeal, OCS argues that because the juvenile court failed to address E.T. as the father listed on B.E.T.'s birth certificate, E.T. cannot be dismissed from the petition. OCS contends that without resolution of these parental rights, B.E.T. cannot be certified available for adoption.
The record shows that, following the filing of the termination proceeding, the curator representing E.T. made an appearance at the permanency review hearing held on June 25, 2009.[4] The curator explained that E.T. was not the father based on DNA testing and asked the court whether E.T. should be dismissed from the termination proceeding, whether he should be included in the termination proceeding, or whether he should execute a voluntary surrender. The curator was advised that the matter would be addressed at the answer hearing scheduled for July 9, 2009.
At the July 9, 2009 hearing, the curator for E.T. argued that, based on the facts of OCS's petition, E.T. had no standing as a father. He was never married to B.M., and DNA testing proved that he was not the father.[5] The curator further argued that E.T's name on the birth certificate, by itself, did not convey any presumption of fatherhood. Thus, E.T. had no parental rights to terminate, and there was no right of action against him. The district court agreed and dismissed E.T. from the petition.
Article 1193 of the Louisiana Children's Code provides:
Unless rights have been terminated in accordance with Title X or XI, consent to the adoption of a child or relinquishment of parental rights shall be required of the following:
(1) The mother of the child.
(2) The father of the child, regardless of the child's actual paternity, if any of the following apply:
(a) The child is a child born of the marriage in accordance with the Louisiana Civil Code or its legal equivalent in another state.
(b) The father is presumed to be the father of the child in accordance with the Louisiana Civil Code or its legal equivalent in another state.
(3) The alleged father of the child who has established his parental rights in accordance with Chapter 10 of Title XI.
(4) The biological father of the child whose paternity has been determined by a judgment of filiation and who has established his parental rights in accordance with Chapter 10 of Title XI.
(5) The custodial agency which has placed the child for adoption, except that the court may grant the adoption without the consent of the agency if the adoption is in the best interest of the child and there is a finding that the agency has unreasonably withheld its consent.
Thus, if E.T. falls within any of the criteria of LSA-Ch.C. art. 1193, and in this matter specifically subsection (2)(b), his consent to the adoption or relinquishment of parental rights is required.
*376 Louisiana Civil Code article 196 provides:
A man may, by authentic act or by signing the birth certificate, acknowledge a child not filiated to another man. The acknowledgment creates a presumption that the man who acknowledges the child is the father. The presumption can be invoked only on behalf of the child. Except as otherwise provided in custody, visitation, and child support cases, the acknowledgment does not create a presumption in favor of the man who acknowledges the child.[6] (Emphasis added.)
Under this article, a man who acknowledges a child creates a presumption that he is the father, which operates in favor of the child only. Such an acknowledgement is created by an authentic act in which the father acknowledges his paternity, or by his signing the child's birth certificate as father. LSA-C.C. art. 196, Revision Comments 2005, Comment (a). There is no time period during which an action to challenge the presumption of this Article must be instituted. LSA-C.C. art. 196, Revision Comments2005, Comment (d).[7]
In this matter, we have a copy of a birth certificate with E.T. listed as the father. Yet, the dilemma is that there is neither an acknowledgement of paternity nor a copy of the birth certificate with parents' signatures in the record before us. Further, there is no explanation in the record as to how E.T's name came to be placed on the birth certificate. In summary, the record is devoid of any evidence as to whether E.T. signed the birth certificate or whether he signed a voluntary acknowledgement of paternity.[8] Thus, based on the record before us, we cannot determine whether the presumption in favor of the child under LSA-C.C. art. 196 is applicable and thus whether E.T. was properly dismissed from this action.
Given that E.T.'s name is listed on the birth certificate; the presumption set forth in LSA-C.C. art. 196; the gravity and finality of the termination of parental rights; and in order to reach a just result, we consider it necessary to reverse the judgment dismissing E.T., and we remand for the district court to determine whether E.T. signed the birth record or an acknowledgement of paternity. Only after this has been decided can it be determined *377 whether E.T. should be dismissed from the proceedings.[9]

CONCLUSION
For the foregoing reasons, the judgment of August 13, 2009, is reversed, and we remand to the district court to determine whether E.T. signed the birth certificate or an acknowledgement of paternity and ultimately whether he should be dismissed from these proceedings. Costs of this appeal are pretermitted until final resolution of this matter.
REVERSED AND REMANDED.
NOTES
[1] Additionally, the court ordered a paternity test on D.M., the husband of B.M. DNA testing also confirmed that D.M. was not the biological father of B.E.T., and D.M. executed a voluntary act of surrender of his parental rights on January 13, 2009.
[2] In its "Certification for Adoption and Petition for Termination of Parental rights" OCS alleged the following:

[E.T.]'s name is listed on the birth certificate of [B.E.T.], as the father. D.N.A. has ruled [E.T.] out as the biological father of [B.E.T.]. He has taken no action to acknowledge paternity, to enroll in the putative father registry, or to otherwise record his paternity of the child. His whereabouts are unknown.
E.T. was served through a curator, who appeared at the answer hearing on July 9, 2009.
[3] Identical judgments were signed on August 13, 2009, and on August 20, 2009.
[4] E.T. was dismissed from the CINC proceedings at the September 11, 2008 hearing when it was determined that he was not the father. E.T. was present at the hearing, but could not be located thereafter.
[5] The DNA results are not in the record, but are not disputed.
[6] We note that there is no evidence in the record of any filiation proceeding.
[7] Regarding the required contents of a birth certificate, LSA-R.S. 40:34 B(1)(h)(ii) provides:

If a child is born outside of marriage, the full name of the father shall be included on the record of birth of the child only if the father and mother have signed a voluntary acknowledgment of paternity or a court of competent jurisdiction has issued an adjudication of paternity.
It is unclear whether this statute would apply in this case as the mother was actually married to someone else at the time of the child's birth. However, the hospital may not have been aware of this fact. Thus, E.T's name may have been included on the record of birth because of a voluntary acknowledgement of paternity in accordance with LSA-R.S. 40:34 B(1)(h)(ii).
We also note that LSA-R.S. 40:46.1 establishes a hospital-based voluntary acknowledgement program. The statute only requires the signatures of the two parents and the signature of a notary who authenticates their signatures. If the form for such an acknowledgement does not provide for the signature of two witnesses, it does not constitute an acknowledgement by authentic act, and thus does not have the effect accorded to such an acknowledgement under Article 196. LSA-C.C. art. 196, Revision Comment2005, Comment (f).
[8] The district court recognized the significance of E.T.'s signature, but ultimately did not answer the question of whether E.T. signed the birth certificate.
[9] Although not critical to our determination, we suggest that the record also be supplemented with the results of E.T.'s DNA testing.